IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JANICE ELAINE GUNN, )
 )
           **Plaintiff,** )
 ) CIVIL ACTION
v. )
 ) No. 16-1283-JWL
NANCY A. BERRYHILL,[1] )
**Acting Commissioner of Social Security,** )
 )
           **Defendant.** )
_____ )

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB, ultimately alleging disability beginning February 1, 2012. (R. 11, 29). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the Administrative Law Judge (ALJ) accorded "some weight" to the opinion of her former employer and "significant weight" to the medical opinions of the state agency psychologists, but erroneously failed to assess residual functional capacity (RFC) limitations in accordance with the weight he accorded those opinions.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

**II.   Discussion**

The court finds no error in the ALJ's RFC assessment.  Plaintiff correctly stated the legal standard applicable to the court's review of the issues presented here:

> RFC is an assessment of the most a claimant can do on a regular and continuing basis despite h[er] limitations.  It is an administrative assessment, based on all of the evidence, of how plaintiff's impairments and related symptoms affect h[er] ability to perform work related activities.  SSR 96–5p, 1996 WL 374183 at *5 ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96–8p, 1996 WL 374184 at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) ... may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.").
>
> The Commissioner issued SSR 96–8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits."  SSR 96-8p, 1996 WL 374184. That ruling includes narrative discussion requirements for the RFC assessment.  The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  The discussion must include

4

consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical opinions regarding plaintiff's capabilities. If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion.

(Pl. Br. 5-6)[2] (citations omitted).

And, that is precisely what the ALJ did. He found that Plaintiff has only non-exertional limitations permitting only simple work involving occasional interaction with co-workers and no interaction with the general public, and that she is able to accept supervision on a basic level. (R. 15). He noted that Plaintiff was able to work successfully as a limousine driver, a job exceeding the limitations he assessed, during the period she alleged she was disabled, that Plaintiff admitted that her symptoms got no worse when she was working or when her mother died, and that medication helps her symptoms a lot. Id. at 16. He found that Plaintiff's allegations of symptoms resulting from her mental impairments "are not entirely credible," id., and Plaintiff does not contest that finding. The ALJ fairly summarized the record evidence, including the medical records, the medical opinions, and the "other" opinions, and explained the weight accorded each opinion and the reasons for that weight. Id. at 16-18.

---

[2]Counsel for Plaintiff, who's firm practices before this court frequently in Social Security cases, has, once again, failed to include numbers on the individual pages in her Social Security Brief, so the court cites to the numbers provided by the software the court uses to read the .pdf files downloaded from the court's CM/ECF system.
    In the past, the court has expressed frustration at this practice, and has directed counsel's firm to correct it. Recent events have led the court to believe that the issue has been at least recognized by counsel, and it is hopeful that steps are being taken to correct it. Such hope is further encouraged by the fact that Plaintiff's Reply Brief in this case includes page numbers.

As Plaintiff argues, the ALJ accorded "some weight" to the opinion of her former employer, Mr. Larson and found that his opinion "fails to shows [sic] that she is unable to perform work with fewer details and social demands." Id. at 18. Plaintiff argues that the limitations suggested by Mr. Larson are disabling. (Pl. Br. 7). She points to vocational expert (VE) testimony that an individual who is either unable to interact on a superficial basis, or who needs extra supervision, or who (because of working in proximity to others) needs a two to three minute break every fifteen minutes cannot maintain competitive employment, and argues that this testimony is inconsistent with the ALJ's finding that Plaintiff could perform work with fewer details and social demands. Id. at 7-8.

But, the ALJ did not find that Plaintiff is unable to interact on a superficial basis, needs extra supervision, or needs a two to three minute break every fifteen minutes when she works in proximity to others, and none of those conclusions <u>necessarily</u> follow from Mr. Larson's opinion. As the ALJ noted, Plaintiff's work for Mr. Larson involved activities or condition which are outside of the limitations assessed by the ALJ, and Plaintiff was able to perform that work for a year or more after she alleges she became disabled. Moreover, the ALJ noted that Mr. Larson's opinion did not consider Plaintiff's limitations if she were given work with fewer details and social demands. As the Commissioner suggests, Plaintiff's argument that Mr. Larson's opinion would apply to Plaintiff's capabilities even in work with fewer details and social demands merely seeks to have the court reweigh the evidence and come to a conclusion more favorable to a finding of disability. As noted above, the court may not do so. <u>Bowman</u>, 511 F.3d at

6

1272 (court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency"); accord, Hackett, 395 F.3d at 1172.

The court's consideration of the opinions of the state agency psychologists, Dr. Schulman and Dr. Wilkinson, is to a similar effect. Plaintiff points out that the psychologists' opinions were given "significant weight" and that in considering Plaintiff's "ability to work in coordination with or in proximity to others without being distracted by them," the psychologists responded that Plaintiff was moderately limited. (Pl. Br. 9) (citing R. 57, 69-70). She argues that the psychologists' responses are consistent with Plaintiff's testimony that she felt anxious when working around others and took a 2-3 minute break every fifteen minutes to calm her nerves, and is further consistent with Mr. Larson's opinion that Plaintiff required extra breaks and special supervision to stay on task. Id. Plaintiff argues that neither the psychologists' RFC assessment nor the ALJ's RFC assessment contains a limitation commensurate with a moderate limitation in the ability to work in proximity to others, and this is error. Id. She argues the error is not harmless because the psychologists' RFC assessment in Section III of the psychologists' form contradicts the moderate limitation expressed in Section I and because while the ALJ assessed limitations in social functioning related to social interaction, he did not assess limitations in concentration, persistence, or pace related to working in proximity to others. Id. at 9-11.

While Plaintiff is correct that her testimony regarding being anxious and taking extra breaks and Mr. Larson's opinion regarding extra breaks and special supervision

might be viewed (as she does) as consistent with the psychologists' opinions, the record evidence does not compel the converse; that the psychologists' opinions are consistent with Plaintiff's testimony or with Plaintiff's view of Mr Larson's opinion. Plaintiff's argument forgets the standard for judicial review of the agency's decision. The question is not whether Plaintiff can make an argument which finds support in some record evidence. The question is whether the ALJ applied the correct legal standard and whether the ALJ's decision is supported by substantial record evidence. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). Therefore, the court begins with the ALJ's decision and evaluation of the psychologists' opinions:

> Significant weight is granted to the opinions of the State agency psychological consultants. Psychologists R.E. Schulman, Ph.D. and Sallye Wilkinson, Ph.D. reviewed the medical evidence of record through late 2013 and concluded that the claimant had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Specifically, they concluded that she is able to understand, remember, use judgment, and make decisions for simple instructions and tasks; can read and learn to do routine repetitive activity; and can attend, concentrate, and maintain pace and persistence for such unskilled/simple tasks. They stated her mental impairments may preclude some types of social interaction, but she can function independently and be supervised, adapt to changes, avoid hazards, travel independently, and make simple independent vocational

8

> decisions (Exhibit 2A [(R. 51-60)] and 4A [(R. 62-73)]). Despite the claimant's mild relapse of symptoms, she required no hospitalization and stabilized on her medications.

(R. 17). The record evidence supports the ALJ's findings in this regard.

The ALJ found that the psychologists concluded that Plaintiff "can attend, concentrate, and maintain pace and persistence for . . . unskilled/simple tasks." Id. As Plaintiff argues, in their Section I consideration the psychologists stated that Plaintiff was moderately limited in her ability to work in coordination with or in proximity to others without being distracted. (R. 57, 70). And, as she also argues, the psychologists found that based upon "the sustained concentration and persistence limitations indicated above," Plaintiff "can attend, concentrate, and maintain pace and persistence for the above noted level of activity." Id. The question is, what is "the above noted level of activity." Id. Plaintiff argues that it "is a moderate limitation in the ability to . . . work in coordination with or in proximity to others without being distracted by them," and that the ALJ did not include an RFC limitation in that regard. (Pl. Br. 10). However, the ALJ's decision reveals that the ALJ understood "the above noted level of activity" to mean "unskilled/simple tasks." (R. 17). The ALJ's understanding is supported by the record evidence and must, therefore, be accepted.

Before the state agency psychologists completed Plaintiff's Mental RFC assessment form, they applied the Commissioner's Psychiatric Review Technique (PRT). (R. 54-55, 66-68). In the explanation section of their PRT form, they concluded that Plaintiff "does not meet a listing and MRFC for simple activity and reduced social contact

9

is provided." Id. at 55, 68 (underline added). Their statements that they provided an MRFC for simple activity suggests that the "above noted level of activity" from the MRFC was simple activity, as the ALJ understood.

As Plaintiff's arguments appear to acknowledge, the Section I instructions in the Mental RFC assessment forms used by the state agency psychologists explain the use of the Mental RFC assessment form:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describe how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). <u>Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box</u>.

(R. 56, 69) (underline added). In this case, the psychologists used the "MRFC - Additional Explanation" and stated, "Claimant can function in a simple setting[,] and with the limitations noted above meet standards." (R. 58, 71). The explanation that Plaintiff can function in a "simple setting" tends to confirm the ALJ's understanding that "the activity level noted above" means "unskilled/simple tasks." Because the record evidence supports the ALJ's understanding and it does not compel the understanding suggested by Plaintiff, the ALJ's understanding must be affirmed.

The ALJ found that Plaintiff is limited to simple work, and thereby included a limitation accounting for the state agency psychologists' opinion regarding limitations in sustained concentration and persistence. Because the record evidence supports the ALJ's

10

finding, and because Plaintiff has not shown that the psychologists' opinion regarding working in proximity to others compels a greater limitation than assessed, Plaintiff has not shown error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 26th day of May 2017, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**